UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| VASCO ESPINOZA, | ) | Case No. 2:10-CV-03213 JAM-GGH |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANTS' |
| | ) | MOTION TO DISMISS. |
| v. | ) | |
| | ) | |
| PATRICK A. CORVINGTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

This matter is before the Court on Defendants Patrick A. Corvington and Corporation for National and Community Service's ("CNCS") (collectively "Defendants") Motion to Dismiss (Doc. #18).[1] Plaintiff Vasco Espinoza ("Plaintiff") opposes the motion with respect to Defendant Corvington, but does not oppose dismissal of CNCS or the Doe defendants (Doc. # 22). Defendant Patrick Corvington, Chief Executive Officer of CNCS, is designated by CNCS as its representative against whom any civil action should be filed.  Defendants filed a reply (Doc. #23).

_____

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g).  The hearing was originally scheduled on February 8, 2012.

1

1      I.   FACTUAL ALLEGATIONS & PROCEDURAL BACKGROUND

2          This action originated when Plaintiff filed a complaint (Doc.

3  #2) with this Court on December 1, 2010.  The allegations in the

4  complaint focus on two interrelated series of events during

5  Plaintiff's employment with Defendant Corporation for National and

6  Community Service.  First, Plaintiff alleges that he was demoted in

7  retaliation for reporting misconduct at CNCS to the Office of the

8  Inspector General ("OIG"), thereby precipitating an investigation

9  into certain practices at CNCS.  Second, Plaintiff alleges that a

10 subordinate employee, Willie Holmes, created a hostile work

11 environment for Plaintiff by engaging in aggressive and threatening

12 behavior.  Mr. Holmes was the Facilities Manager within the

13 Operations Department.  Plaintiff alleges that this behavior was

14 not properly addressed by their mutual supervisors, Merlene Mazyck

15 and James Phipps.

16     A.   Plaintiff's Promotion

17         Plaintiff alleges that he was given a new title on June 3,

18 2008.  Plaintiff claims that his title was changed from Deputy

19 Director of Operations to Deputy Director to reflect expanded

20 duties.  Plaintiff asserts that his compensation and benefits were

21 unchanged.  Plaintiff considered this to be a promotion, but does

22 not allege that it was so characterized by CNCS.

23     B.   The OIG Investigation

24         Central to Plaintiff's allegations is an investigation

25 allegedly started by Plaintiff's report to the OIG that certain

26 employees, particularly Mr. Holmes, were engaged in accounting and

27 operational improprieties at CNCS.  Plaintiff alleges that he made

28 a report to the OIG shortly before December 1, 2008.  Plaintiff was

1   allegedly contacted by the National Director of CNCS, Ms. Mazcyk,

2   to verify that he made the report to the OIG.  The next month,

3   January 2009, Plaintiff alleges that his title was changed back to

4   Deputy Director of Operations.  The allegations in the complaint

5   indicate that his salary and benefits were not reduced.  Plaintiff

6   alleges that his title was changed "to undermine his status on

7   campus, and to retaliate against him for his contact and

8   cooperation with the Office of the Inspector General."  Complaint ¶

9   11.

10      C.   Plaintiff's Allegations Regarding Mr. Holmes

11      Plaintiff's complaint also includes allegations that a

12  subordinate employee was given favorable treatment because of his

13  race to Plaintiff's detriment.  Plaintiff alleges that Mr. Holmes

14  was generally threatening, aggressive, and hostile toward Plaintiff

15  and other employees.  Plaintiff alleges that he first complained to

16  superiors at CNCS about Mr. Holmes in May, 2008.  In June, 2008

17  Plaintiff alleges that he again reported Mr. Holmes's behavior,

18  which resulted in the issuance of a "Notice of Formal Reprimand" on

19  August 19, 2008.  On October 16, 2008, Plaintiff alleges that he

20  again complained about Mr. Holmes's behavior.  This complaint

21  resulted in Mr. Holmes being placed on administrative leave.  Mr.

22  Holmes was given a 30 day suspension, and allowed to return to CNCS

23  in January, 2009.  Plaintiff alleges that the original

24  recommendation was to terminate Mr. Holmes, but that the

25  recommendation was downgraded to a suspension.

26      At some time after that, Plaintiff alleges that the OIG

27  investigation confirmed improper operational and fiscal activities

28  on the part of Mr. Holmes.  The then acting National Director of

1    CNCS, Mikel Herrington, issued a "Notice of Proposed Removal,"

2    Plaintiff alleges, and Mr. Holmes subsequently stepped down from

3    his position at CNCS.

4         Plaintiff alleges that CNCS supervisors James Phipps and

5    Merlene Mazyck, both African American, failed to properly deal with

6    complaints directed toward Mr. Holmes by Plaintiff and other

7    employees because Mr. Holmes is also African American.

8         D.   Claims

9         Plaintiff's complaint contains nine claims.  Claims 2-5 and 8

10   were voluntarily dismissed by Plaintiff on November 16, 2011. (Doc.

11   #16)  Defendants' current motion seeks dismissal of the remaining

12   claims: (1) Retaliation in Violation of 42 U.S.C. § 2000e-3; (6)

13   Discrimination Based on Race in Violation of 42 U.S.C. § 2000e-2;

14   (7) Intentional Infliction of Emotional Distress; and (9) Negligent

15   Supervision, Hiring, and Retention.

16        The Court has jurisdiction over the federal claims pursuant to

17   28 U.S.C. § 1331 and jurisdiction over the remaining claims

18   pursuant to 28 U.S.C. § 1367.

19

20                        II.   OPINION

21        A.   Legal Standard

22             1.   Motion to Dismiss

23        A party may move to dismiss an action for failure to state a

24   claim upon which relief can be granted pursuant to Federal Rule of

25   Civil Procedure 12(b)(6).  In considering a motion to dismiss, the

26   court must accept the allegations in the complaint as true and draw

27   all reasonable inferences in favor of the plaintiff.  Scheuer v.

28   Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by

1   Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319,

2   322 (1972).  Assertions that are mere "legal conclusions," however,

3   are not entitled to the assumption of truth.  Ashcroft v. Iqbal,

4   129 S. Ct. 1937, 1950 (2009) (citing Bell Atl. Corp. v. Twombly,

5   550 U.S. 544, 555 (2007)).  To survive a motion to dismiss, a

6   plaintiff needs to plead "enough facts to state a claim to relief

7   that is plausible on its face."  Twombly, 550 U.S. at 570.

8   Dismissal is appropriate where the plaintiff fails to state a claim

9   supportable by a cognizable legal theory.  Balistreri v. Pacifica

10  Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

11       Upon granting a motion to dismiss for failure to state a

12  claim, the court has discretion to allow leave to amend the

13  complaint pursuant to Federal Rule of Civil Procedure 15(a).

14  "Dismissal with prejudice and without leave to amend is not

15  appropriate unless it is clear . . . that the complaint could not

16  be saved by amendment."  Eminence Capital, L.L.C. v. Aspeon, Inc.,

17  316 F.3d 1048, 1052 (9th Cir. 2003).

18       B.   Discussion

19            1.   Defendant CNCS and Doe Defendants

20       Defendants seek dismissal of CNCS and the Doe defendants, and

21  Plaintiff does not oppose dismissal.  Accordingly, CNCS and the Doe

22  Defendants are dismissed from this action with prejudice.

23            2.   Claims Seven and Nine

24       Defendants argue that these claims should be dismissed because

25  Plaintiff failed to exhaust agency remedies as required by the

26  Federal Torts Claims Act, 28 U.S.C. § 2675(a).  Plaintiff does not

27  oppose Defendants' motion with regard to these claims.

28  Accordingly, Defendants' motion to dismiss claims seven and nine is

1  granted with prejudice.

2          3.  Plaintiff's Title VII Retaliation Claim

3      Defendants seek dismissal of Plaintiff's retaliation claim

4  because they argue that the complaint fails to allege 1) that

5  Plaintiff engaged in activity protected by Title VII, 2) that

6  Plaintiff suffered an adverse employment action, and 3) that there

7  was a causal link between an adverse employment action and alleged

8  protected activity.  In short, Defendants argue that Plaintiff

9  failed to allege a violation of Title VII.

10     Plaintiff responds that the report he made to the OIG as well

11 as the complaints about Mr. Holmes constituted protected activity.

12 Plaintiff also argues that his demotion, allegedly resulting from

13 the OIG report, as well as the decision not to immediately fire Mr.

14 Holmes constituted adverse employment actions.  Plaintiff explains

15 that the latter adverse action is sufficient because Mr. Holmes

16 created a hostile work environment for Plaintiff.  Finally,

17 Plaintiff argues that the short time period between his complaints

18 and other events establish a causal nexus between the adverse

19 employment action and his protected activity.  For instance,

20 Plaintiff mentions in his opposition that after he complained about

21 Mr. Holmes, he was subjected to harassment by Mr. Holmes and his

22 friends and family, but there is no corresponding allegation in the

23 complaint.

24     Absent allegations of direct discrimination, a Title VII

25 retaliation claim pursuant to 42 U.S.C. 2000e-3 is analyzed

26 according to the McDonnell Douglas burden shifting standard.

27 Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir. 1987) (citations

28 omitted).  A plaintiff establishes a prima facie case by showing

1  "that (1) he engaged or was engaging in activity protected under

2  Title VII, (2) the employer subjected him to an adverse employment

3  decision, and (3) there was a causal link between the protected

4  activity and the employer's action." Id. (citations omitted).

5       For the purposes of a motion to dismiss, a pleading does not

6  need to contain all of the facts necessary to show a prima facie

7  case. See Washington v. Certainteed Gypsum, Inc., No. 2:10-cv-

8  00204-GMN-LRL, 2011 WL 3705000, at *5 (D. Nev. Aug. 24, 2011). The

9  relevant standard requires that the allegations in the complaint

10 give fair notice of the nature of the claim to the opposing party,

11 and that the factual allegations that are taken as true plausibly

12 suggest entitlement to relief. Starr v. Baca, 652 F.3d 1202, 1216

13 (9th Cir. 2011). While facts supporting all of the elements of a

14 prima facie case are not required in a Title VII complaint, "those

15 elements are nonetheless relevant to the court's analysis of the

16 sufficiency of the complaint." Sablan v. A.B. Won Pat Int'l

17 Airport Auth., Guam, No. 10-00013, 2010 WL 5148202, at *4 (D. Guam

18 Dec. 9, 2010).

19            (a)   Plaintiff's Alleged Protected Activity

20      Title VII retaliation claims only apply to activity protected

21 by Title VII. 42 U.S.C. § 2000e-3(a) (prohibiting discrimination

22 against an employee who makes charges, testifies, participates, or

23 assists in Title VII enforcement proceedings); Vasconcelos v.

24 Meese, 907 F.2d 111, 113 (9th Cir. 1990) (The purpose of section

25 2000e-3's participation clause "is to protect the employee who

26 utilizes the tools provided by Congress to protect his rights.")

27 (quoting Sias v. City Demonstration Agency, 588 F.2d 692, 695 (9th

28 Cir.1978)). Thus, a plaintiff can only assert a Title VII

retaliation claim if he alleges that he participated in activity

protected by Title VII.

First, Plaintiff alleges that he complained to the OIG about

operational and fiscal misconduct.  This complaint is directly

analogous to the Vasconcelos case.  907 F.2d 111.  In that case,

the plaintiff had no claim because he was fired for making

statements during the course of an internal affairs investigation,

not during an investigation pursuant to a Title VII complaint.  Id.

at 113.  Plaintiff's allegation in this case that he made a

complaint to the OIG and was punished for is not "protected

activity" for Title VII purposes because Title VII only applies to

complaints concerning discrimination because of race, sex, national

origin, religion, or color.

Plaintiff's argument that he alleges protected activity beyond

the report to the OIG fails for the same reason.  In Plaintiff's

opposition, he points out that the complaint contains allegations

that Plaintiff complained about Mr. Holmes's behavior, and that his

supervisors failed to respond because they favored Mr. Holmes's

race.  This failure to respond, according to Plaintiff, created a

hostile working environment for Plaintiff.

Missing from these allegations, however, is any indication

that Plaintiff was complaining about activity prohibited by Title

VII.  According to 42 U.S.C. § 2000e-2, it is unlawful for an

employer to discriminate against an employee "because of such

individual's race, color, religion, sex, or national origin[.]"

Plaintiff's allegations, however, only contain reference to

generalized threatening and aggressive behavior from Mr. Holmes.

There is no indication that Mr. Holmes was behaving in such a way

1  due to Plaintiff's race, color, religion, sex, or national origin.

2  Additionally, there is no indication that Plaintiff's complaints

3  about Mr. Holmes touched on any of the protected attributes.  Even

4  if Defendants later favored Mr. Holmes because of his race, their

5  activity does not impute to Plaintiff and make his activity,

6  complaining about Mr. Holmes, protected for the purposes of a

7  retaliation claim.  A complaint by Plaintiff concerning favoritism

8  based on race may be protected by Title VII, but this complaint

9  does not allege that he ever went to his supervisors and complained

10  on that basis.

11       Neither Plaintiff's report to the OIG nor his complaints about

12  Mr. Holmes's allegedly aggressive behavior, as pled, constitute

13  protected activity for the purposes of a 42 U.S.C. § 2000e-3 claim.

14                    (b)   Adverse Employment Action

15       For the second element of the prima facie case, Plaintiff

16  argues that his demotion, even though it was in name only,

17  constituted adverse employment action.  Defendants respond that

18  since he did not experience economic harm, there was no adverse

19  employment action.

20       "[A]n adverse employment action is one that materially affects

21  the compensation, terms, conditions, or privileges of . . .

22  employment."  Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th

23  Cir. 2008) (quoting Chuang v. Univ. of Cal. Davis, 225 F.3d 1115,

24  1126 (9th Cir. 2000).  An adverse employment action is one that "is

25  reasonably likely to deter employees from engaging in protected

26  activity."  Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000).

27       In this case, Plaintiff's alleged demotion was not accompanied

28  by a reduction in salary.  His title was only changed from "Deputy

Director of Operations" to "Deputy Director."  Plaintiff also alleges that his job duties were reduced at the same time, but he does not allege what those duties were.  Further, Plaintiff admits in the complaint that his "promotion" from "Deputy Director of Operations" to "Deputy Director" was not necessarily a promotion at all, explaining, "given the unambiguous nature of the increased responsibility, [Plaintiff] considered this to be a promotion, even though there was no increase in pay attached to the new role" Compl. ¶ 7.  There is no allegation that CNCS also considered the title change to be a promotion.  Further, Plaintiff pled that the old Deputy Director of Operations position was combined with the Deputy Director position.  Id.  This Court finds that based on the allegations in the complaint, Plaintiff was not promoted from one position to another.

Plaintiff admits that he received no reduction in pay when he was allegedly demoted back to the previously held position of Deputy Director of Operations. He also has failed to allege exactly what privileges and responsibilities he lost in the purported demotion, and therefore the complaint does not plead facts sufficient to bring the occurrence of a demotion beyond speculation.  Twombly, 550 U.S. at 570 (a plaintiff needs to plead "enough facts to state a claim to relief that is plausible on its face").  In the present complaint, it is unclear whether the alleged employment action was a mere change of title or a bona fide demotion, and thus the Rule 8 pleading standard is not met, and Plaintiff has not alleged the second element of a prima facie case. Id.

Plaintiff also argues that the continued presence of Mr.

Holmes at the workplace constituted a hostile work environment, which can be the basis for finding an adverse employment action.

"For an atmosphere of . . . harassment or hostility to be actionable . . . the offending behavior must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Pa. State Police v. Suders, 542 U.S. 129, 146-47 (2004) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)).  A hostile work environment creates a constructive discharge amounting to an adverse employment action when a reasonable person in the same circumstance would feel forced to resign.  Id. at 147 (citing Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1160 (C.A.8 1999)).

Again, Plaintiff fails to meet the requisite pleading standard.  The complaint repeatedly alleges that Mr. Holmes conduct was pervasively harassing, aggressive, and threatening, but it provides no indication as to what that behavior actually was.  Rule 8 requires not just a recitation of legal characterizations or labels, but the rule also requires Plaintiff to plead facts sufficient to bring the allegations from the realm of the speculative to the plausible.  Twombly, 550 U.S. at 570. Plaintiff's allegations also indicate that Plaintiff left CNCS in August 2009, several months after Mr. Holmes was actually removed from CNCS.  Compl. ¶¶ 24, 26.  The complaint does not plausibly allege that Mr. Holmes's actions created a hostile work environment that caused Plaintiff to quit because Plaintiff quit well after Mr. Holmes was terminated.

In short, The Court finds that Plaintiff has not properly alleged that he suffered an adverse employment action, either

1    directly or through the hostile work environment doctrine.

2                    (c)   Causal Nexus

3        Plaintiff has not sufficiently alleged the first two

4    components of a prima facie case, and therefore the complaint

5    cannot allege a causal nexus between the two.  Additionally,

6    Plaintiff's complaint indicates that the reason that he was

7    allegedly demoted was because he reported misconduct to the OIG.

8    Compl. ¶¶ 10-11.  Thus, Plaintiff's allegations concerning Mr.

9    Holmes are unrelated to Plaintiff's alleged demotion.  As explained

10   above, the report to the OIG is not protected by Title VII, and

11   Plaintiff alleges that he was demoted for that reason.  Plaintiff

12   does allege, "As a result of the disparate treatment of Mr. Willie

13   Holmes on the basis of his race (African American), the Plaintiff

14   was subjected to an ongoing hostile working environment, continued

15   harassment, and discrimination based on his race, color, and

16   national origin."  Compl. ¶ 25.  This allegation is a mere legal

17   conclusion, however, and the complaint is devoid of supporting

18   facts that make the allegation plausible.  Twombly, 550 U.S. at

19   570.  Accordingly, Plaintiff has not pled a causal nexus between an

20   alleged adverse employment action and any protected activity.

21       In sum, the Court finds that the complaint places Defendants

22   on notice of the nature of the claim against them, but Plaintiff

23   fails to allege facts sufficient to make entitlement to relief

24   plausible.  Without facts supporting the nature of Mr. Holmes's

25   behavior, the nature of Plaintiff's alleged demotion, and some

26   connection to activity protected by Title VII Plaintiff's complaint

27   does not meet federal pleading requirements.  Since Plaintiff may

28   be able to cure the defects in his pleading through amendment,

                                    12

1  dismissal without prejudice is appropriate.

2          4.   Plaintiff's Racial Discrimination Claim

3      Defendants move to dismiss Plaintiff's Title VII

4  discrimination claim on the grounds that the complaint does not

5  contain a plausible discrimination claim.  Plaintiff responds that

6  there is a viable claim, and each element of a prima facie case is

7  met on the theory that since Defendants treated Mr. Holmes

8  favorably due to his race, Plaintiff was subjected to further

9  harassment from Mr. Holmes.

10     The legal standard for Plaintiff's race discrimination claim

11  is the same as the standard for his retaliation claim except that

12  the elements of the prima facie case are different.  To establish a

13  prima facie case of discrimination under Title VII, Plaintiff must

14  show "(1) he is a member of a protected class; (2) he is qualified

15  for his employment; (3) he experienced adverse employment action;

16  and (4) similarly situated individuals outside his protected class

17  were treated more favorably, or other circumstances surrounding the

18  adverse action give rise to an inference of discrimination."

19  Fonseca v. Sysco Food Services of Arizona, Inc., 374 F.3d 840, 847

20  (9th Cir. 2004) (citing McDonnell Douglas Corp., 411 U.S. at 802).

21          (a)   Plaintiff's Protected Class

22     There is no dispute that Plaintiff is Hispanic, a class

23  protected by Title VII.

24          (b)   Plaintiff Was Qualified For His Position

25     Defendants argue that the complaint never states that

26  Plaintiff was performing according to the employers legitimate

27  expectations.  Plaintiff responds that the complaint alleges that

28  he was promoted after a short time in employment, which indicates

13

1   that he was performing according to Defendants' legitimate

2   expectations.   Defendants do not rebut this argument, stating only

3   that they disagree with Plaintiff's argument.

4        Referring to the clear language in the complaint, the Court

5   finds that Plaintiff's qualifications for his position are properly

6   alleged.   Plaintiff was hired by CNCS, given the title Deputy

7   Director, and then returned to the job title Deputy Director of

8   Operations.   Plaintiff held these jobs and was not terminated,

9   disciplined, or warned for poor performance.   It is incongruous

10  with Plaintiff's alleged job history for Defendants to argue that

11  he was somehow not qualified for the positions that he was hired by

12  Defendants to fill.

13              (c)   Plaintiff Suffered An Adverse Employment Action

14       The Court finds that Plaintiff does not sufficiently allege

15  that he suffered an adverse employment for the same reasons

16  discussed above.

17              (d)   Similarly Situated Individuals Were Treated
                      More Favorably
18

19       Defendant contends that the complaint fails with respect to

20  this element of the prima facie case because Plaintiff claims only

21  that Mr. Holmes was treated more favorably than Plaintiff.   Since

22  Mr. Holmes was Plaintiff's subordinate, they were not similarly

23  situated.   Plaintiff responds that the analysis is not so rigid,

24  and that their roles were similar in all material respects.

25       "In order to show that the [employees] allegedly receiving

26  more favorable treatment are similarly situated . . ., the

27  individuals seeking relief must demonstrate, at the least, that

28  they are similarly situated to those employees in all material

1  respects." <u>Moran v. Selig</u>, 447 F.3d 748, 755 (9th Cir. 2006)

2  (citing <u>Aragon v. Republic Silver State Disposal, Inc.</u>, 292 F.3d

3  654, 660 (9th Cir.2002)).  "[I]ndividuals are similarly situated

4  when they have similar jobs and display similar conduct. . . .

5  Employees in supervisory positions are generally deemed not to be

6  similarly situated to lower level employees." <u>Vasquez v. Cnty. of</u>

7  <u>L.A.</u>, 349 F.3d 634, 641 (9th Cir. 2003).  To meet this element,

8  Plaintiff may also allege "other circumstances surrounding the

9  adverse employment action [that] give rise to an inference of

10  discrimination."  <u>Peterson v. Hewlett-Packard Co.</u>, 358 F.3d 599,

11  603 (9th Cir. 2004).

12       In this case, it is clear from the face of the complaint that

13  the allegations do not meet the similarly situated requirement.

14  Plaintiff was either the Deputy Director or the Deputy Director of

15  Operations, and Mr. Holmes was his subordinate.  The two employees

16  were not similarly situated for purposes of Title VII.

17  Additionally, Plaintiff did not allege that he engaged in the

18  conduct practiced by Mr. Holmes.  Namely, Plaintiff does not allege

19  that both he and Mr. Holmes were aggressive, hostile, and

20  threatening to each other and other employees.  Thus, Plaintiff

21  does not allege that he and Mr. Holmes were treated differently

22  despite displaying similar conduct.  There are no facts or

23  allegations in the complaint that show other circumstances that

24  give rise to an inference of discrimination.

25       The complaint again places Defendants on notice of the nature

26  of the claim against them, but Plaintiff fails to allege facts

27  sufficient to make his allegations plausible.  Without facts

28  supporting the nature of Mr. Holmes's behavior, the nature of

Plaintiff's alleged demotion, or some facts that give rise to a plausible inference of discrimination, Plaintiff's complaint does not meet federal pleading requirements.  Accordingly, this claim is dismissed.  Since Plaintiff may be able to cure the defects in the complaint through amendment, leave to amend is granted.

### III. ORDER

After carefully reviewing all of the papers filed in relation to this motion, the Court rules as follows:

1.   All claims against defendant Corporation for National Community Service and all Doe defendants are dismissed with prejudice;

2.   Plaintiff's Intentional Infliction of Emotional Distress and Negligent Supervision, Hiring, and Retention claims are dismissed with prejudice; and

3.   Plaintiff's remaining claims, Retaliation in Violation of 42 U.S.C. § 2000e-3(a) and Discrimination Based on Race in Violation of 42 U.S.C. § 2000e-2, are dismissed with leave to amend.

If Plaintiff wishes to file an Amended Complaint that is in accordance with this Order, it must be filed within twenty (20) days.  Otherwise, this case will be dismissed with prejudice.

IT IS SO ORDERED.

Dated: February 27, 2012

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE