UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| VASCO ESPINOZA, | ) | Case No. 2:10-CV-03213 JAM-GGH |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANTS' |
| | ) | MOTION TO DISMISS. |
| v. | ) | |
| | ) | |
| PATRICK A. CORVINGTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

This matter is before the Court on Defendants Patrick A.
Corvington and Corporation for National and Community Service's
("CNCS") (collectively "Defendants") Motion to Dismiss (Doc. #18).[1]
Plaintiff Vasco Espinoza ("Plaintiff") opposes the motion with
respect to Defendant Corvington, but does not oppose dismissal of
CNCS or the Doe defendants (Doc. # 22). Defendant Patrick
Corvington, Chief Executive Officer of CNCS, is designated by CNCS
as its representative against whom any civil action should be
filed.  Defendants filed a reply (Doc. #23).

---

[1] This motion was determined to be suitable for decision without
oral argument. E.D. Cal. L.R. 230(g).  The hearing was originally
scheduled on February 8, 2012.

I.   FACTUAL ALLEGATIONS & PROCEDURAL BACKGROUND

This action originated when Plaintiff filed a complaint (Doc. #2) with this Court on December 1, 2010.  The allegations in the complaint focus on two interrelated series of events during Plaintiff's employment with Defendant Corporation for National and Community Service.  First, Plaintiff alleges that he was demoted in retaliation for reporting misconduct at CNCS to the Office of the Inspector General ("OIG"), thereby precipitating an investigation into certain practices at CNCS.  Second, Plaintiff alleges that a subordinate employee, Willie Holmes, created a hostile work environment for Plaintiff by engaging in aggressive and threatening behavior.  Mr. Holmes was the Facilities Manager within the Operations Department.  Plaintiff alleges that this behavior was not properly addressed by their mutual supervisors, Merlene Mazyck and James Phipps.

A.   Plaintiff's Promotion

Plaintiff alleges that he was given a new title on June 3, 2008.  Plaintiff claims that his title was changed from Deputy Director of Operations to Deputy Director to reflect expanded duties.  Plaintiff asserts that his compensation and benefits were unchanged.  Plaintiff considered this to be a promotion, but does not allege that it was so characterized by CNCS.

B.   The OIG Investigation

Central to Plaintiff's allegations is an investigation allegedly started by Plaintiff's report to the OIG that certain employees, particularly Mr. Holmes, were engaged in accounting and operational improprieties at CNCS.  Plaintiff alleges that he made a report to the OIG shortly before December 1, 2008.  Plaintiff was

1   allegedly contacted by the National Director of CNCS, Ms. Mazcyk,

2   to verify that he made the report to the OIG.  The next month,

3   January 2009, Plaintiff alleges that his title was changed back to

4   Deputy Director of Operations.  The allegations in the complaint

5   indicate that his salary and benefits were not reduced.  Plaintiff

6   alleges that his title was changed "to undermine his status on

7   campus, and to retaliate against him for his contact and

8   cooperation with the Office of the Inspector General."  Complaint ¶

9   11.

10        C.   Plaintiff's Allegations Regarding Mr. Holmes

11        Plaintiff's complaint also includes allegations that a

12   subordinate employee was given favorable treatment because of his

13   race to Plaintiff's detriment.  Plaintiff alleges that Mr. Holmes

14   was generally threatening, aggressive, and hostile toward Plaintiff

15   and other employees.  Plaintiff alleges that he first complained to

16   superiors at CNCS about Mr. Holmes in May, 2008.  In June, 2008

17   Plaintiff alleges that he again reported Mr. Holmes's behavior,

18   which resulted in the issuance of a "Notice of Formal Reprimand" on

19   August 19, 2008.  On October 16, 2008, Plaintiff alleges that he

20   again complained about Mr. Holmes's behavior.  This complaint

21   resulted in Mr. Holmes being placed on administrative leave.  Mr.

22   Holmes was given a 30 day suspension, and allowed to return to CNCS

23   in January, 2009.  Plaintiff alleges that the original

24   recommendation was to terminate Mr. Holmes, but that the

25   recommendation was downgraded to a suspension.

26        At some time after that, Plaintiff alleges that the OIG

27   investigation confirmed improper operational and fiscal activities

28   on the part of Mr. Holmes.  The then acting National Director of

1    CNCS, Mikel Herrington, issued a "Notice of Proposed Removal,"

2    Plaintiff alleges, and Mr. Holmes subsequently stepped down from

3    his position at CNCS.

4         Plaintiff alleges that CNCS supervisors James Phipps and

5    Merlene Mazyck, both African American, failed to properly deal with

6    complaints directed toward Mr. Holmes by Plaintiff and other

7    employees because Mr. Holmes is also African American.

8         D.   Claims

9         Plaintiff's complaint contains nine claims.  Claims 2-5 and 8

10   were voluntarily dismissed by Plaintiff on November 16, 2011. (Doc.

11   #16)  Defendants' current motion seeks dismissal of the remaining

12   claims: (1) Retaliation in Violation of 42 U.S.C. § 2000e-3; (6)

13   Discrimination Based on Race in Violation of 42 U.S.C. § 2000e-2;

14   (7) Intentional Infliction of Emotional Distress; and (9) Negligent

15   Supervision, Hiring, and Retention.

16        The Court has jurisdiction over the federal claims pursuant to

17   28 U.S.C. § 1331 and jurisdiction over the remaining claims

18   pursuant to 28 U.S.C. § 1367.

19

20                        II.  OPINION

21        A.   Legal Standard

22             1.   Motion to Dismiss

23        A party may move to dismiss an action for failure to state a

24   claim upon which relief can be granted pursuant to Federal Rule of

25   Civil Procedure 12(b)(6).  In considering a motion to dismiss, the

26   court must accept the allegations in the complaint as true and draw

27   all reasonable inferences in favor of the plaintiff.  Scheuer v.

28   Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by

1  Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319,

2  322 (1972).  Assertions that are mere "legal conclusions," however,

3  are not entitled to the assumption of truth.  Ashcroft v. Iqbal,

4  129 S. Ct. 1937, 1950 (2009) (citing Bell Atl. Corp. v. Twombly,

5  550 U.S. 544, 555 (2007)).  To survive a motion to dismiss, a

6  plaintiff needs to plead "enough facts to state a claim to relief

7  that is plausible on its face." Twombly, 550 U.S. at 570.

8  Dismissal is appropriate where the plaintiff fails to state a claim

9  supportable by a cognizable legal theory.  Balistreri v. Pacifica

10 Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

11      Upon granting a motion to dismiss for failure to state a

12 claim, the court has discretion to allow leave to amend the

13 complaint pursuant to Federal Rule of Civil Procedure 15(a).

14 "Dismissal with prejudice and without leave to amend is not

15 appropriate unless it is clear . . . that the complaint could not

16 be saved by amendment." Eminence Capital, L.L.C. v. Aspeon, Inc.,

17 316 F.3d 1048, 1052 (9th Cir. 2003).

18      B.   Discussion

19           1.   Defendant CNCS and Doe Defendants

20      Defendants seek dismissal of CNCS and the Doe defendants, and

21 Plaintiff does not oppose dismissal.  Accordingly, CNCS and the Doe

22 Defendants are dismissed from this action with prejudice.

23           2.   Claims Seven and Nine

24      Defendants argue that these claims should be dismissed because

25 Plaintiff failed to exhaust agency remedies as required by the

26 Federal Torts Claims Act, 28 U.S.C. § 2675(a).  Plaintiff does not

27 oppose Defendants' motion with regard to these claims.

28 Accordingly, Defendants' motion to dismiss claims seven and nine is

1  granted with prejudice.

2           3.  Plaintiff's Title VII Retaliation Claim

3        Defendants seek dismissal of Plaintiff's retaliation claim

4  because they argue that the complaint fails to allege 1) that

5  Plaintiff engaged in activity protected by Title VII, 2) that

6  Plaintiff suffered an adverse employment action, and 3) that there

7  was a causal link between an adverse employment action and alleged

8  protected activity.  In short, Defendants argue that Plaintiff

9  failed to allege a violation of Title VII.

10       Plaintiff responds that the report he made to the OIG as well

11  as the complaints about Mr. Holmes constituted protected activity.

12  Plaintiff also argues that his demotion, allegedly resulting from

13  the OIG report, as well as the decision not to immediately fire Mr.

14  Holmes constituted adverse employment actions.  Plaintiff explains

15  that the latter adverse action is sufficient because Mr. Holmes

16  created a hostile work environment for Plaintiff.  Finally,

17  Plaintiff argues that the short time period between his complaints

18  and other events establish a causal nexus between the adverse

19  employment action and his protected activity.  For instance,

20  Plaintiff mentions in his opposition that after he complained about

21  Mr. Holmes, he was subjected to harassment by Mr. Holmes and his

22  friends and family, but there is no corresponding allegation in the

23  complaint.

24       Absent allegations of direct discrimination, a Title VII

25  retaliation claim pursuant to 42 U.S.C. 2000e-3 is analyzed

26  according to the McDonnell Douglas burden shifting standard.

27  Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir. 1987) (citations

28  omitted).  A plaintiff establishes a prima facie case by showing

6

1  "that (1) he engaged or was engaging in activity protected under
2  Title VII, (2) the employer subjected him to an adverse employment
3  decision, and (3) there was a causal link between the protected
4  activity and the employer's action."  Id. (citations omitted).

5      For the purposes of a motion to dismiss, a pleading does not
6  need to contain all of the facts necessary to show a prima facie
7  case.  See Washington v. Certainteed Gypsum, Inc., No. 2:10-cv-
8  00204-GMN-LRL, 2011 WL 3705000, at *5 (D. Nev. Aug. 24, 2011).  The
9  relevant standard requires that the allegations in the complaint
10 give fair notice of the nature of the claim to the opposing party,
11 and that the factual allegations that are taken as true plausibly
12 suggest entitlement to relief.  Starr v. Baca, 652 F.3d 1202, 1216
13 (9th Cir. 2011).  While facts supporting all of the elements of a
14 prima facie case are not required in a Title VII complaint, "those
15 elements are nonetheless relevant to the court's analysis of the
16 sufficiency of the complaint."  Sablan v. A.B. Won Pat Int'l
17 Airport Auth., Guam, No. 10-00013, 2010 WL 5148202, at *4 (D. Guam
18 Dec. 9, 2010).

19          (a)   Plaintiff's Alleged Protected Activity
20     Title VII retaliation claims only apply to activity protected
21 by Title VII.  42 U.S.C. § 2000e-3(a) (prohibiting discrimination
22 against an employee who makes charges, testifies, participates, or
23 assists in Title VII enforcement proceedings); Vasconcelos v.
24 Meese, 907 F.2d 111, 113 (9th Cir. 1990) (The purpose of section
25 2000e-3's participation clause "is to protect the employee who
26 utilizes the tools provided by Congress to protect his rights.")
27 (quoting Sias v. City Demonstration Agency, 588 F.2d 692, 695 (9th
28 Cir.1978)).  Thus, a plaintiff can only assert a Title VII

1  retaliation claim if he alleges that he participated in activity

2  protected by Title VII.

3       First, Plaintiff alleges that he complained to the OIG about

4  operational and fiscal misconduct.  This complaint is directly

5  analogous to the Vasconcelos case.  907 F.2d 111.  In that case,

6  the plaintiff had no claim because he was fired for making

7  statements during the course of an internal affairs investigation,

8  not during an investigation pursuant to a Title VII complaint.  Id.

9  at 113.  Plaintiff's allegation in this case that he made a

10  complaint to the OIG and was punished for is not "protected

11  activity" for Title VII purposes because Title VII only applies to

12  complaints concerning discrimination because of race, sex, national

13  origin, religion, or color.

14       Plaintiff's argument that he alleges protected activity beyond

15  the report to the OIG fails for the same reason.  In Plaintiff's

16  opposition, he points out that the complaint contains allegations

17  that Plaintiff complained about Mr. Holmes's behavior, and that his

18  supervisors failed to respond because they favored Mr. Holmes's

19  race.  This failure to respond, according to Plaintiff, created a

20  hostile working environment for Plaintiff.

21       Missing from these allegations, however, is any indication

22  that Plaintiff was complaining about activity prohibited by Title

23  VII.  According to 42 U.S.C. § 2000e-2, it is unlawful for an

24  employer to discriminate against an employee "because of such

25  individual's race, color, religion, sex, or national origin[.]"

26  Plaintiff's allegations, however, only contain reference to

27  generalized threatening and aggressive behavior from Mr. Holmes.

28  There is no indication that Mr. Holmes was behaving in such a way

8

1   due to Plaintiff's race, color, religion, sex, or national origin.

2   Additionally, there is no indication that Plaintiff's complaints

3   about Mr. Holmes touched on any of the protected attributes.  Even

4   if Defendants later favored Mr. Holmes because of his race, their

5   activity does not impute to Plaintiff and make his activity,

6   complaining about Mr. Holmes, protected for the purposes of a

7   retaliation claim.  A complaint by Plaintiff concerning favoritism

8   based on race may be protected by Title VII, but this complaint

9   does not allege that he ever went to his supervisors and complained

10  on that basis.

11      Neither Plaintiff's report to the OIG nor his complaints about

12  Mr. Holmes's allegedly aggressive behavior, as pled, constitute

13  protected activity for the purposes of a 42 U.S.C. § 2000e-3 claim.

14                  (b)   Adverse Employment Action

15      For the second element of the prima facie case, Plaintiff

16  argues that his demotion, even though it was in name only,

17  constituted adverse employment action.  Defendants respond that

18  since he did not experience economic harm, there was no adverse

19  employment action.

20      "[A]n adverse employment action is one that materially affects

21  the compensation, terms, conditions, or privileges of . . .

22  employment."  Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th

23  Cir. 2008) (quoting Chuang v. Univ. of Cal. Davis, 225 F.3d 1115,

24  1126 (9th Cir. 2000).  An adverse employment action is one that "is

25  reasonably likely to deter employees from engaging in protected

26  activity."  Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000).

27      In this case, Plaintiff's alleged demotion was not accompanied

28  by a reduction in salary.  His title was only changed from "Deputy

9

1 Director of Operations" to "Deputy Director."  Plaintiff also
2 alleges that his job duties were reduced at the same time, but he
3 does not allege what those duties were.  Further, Plaintiff admits
4 in the complaint that his "promotion" from "Deputy Director of
5 Operations" to "Deputy Director" was not necessarily a promotion at
6 all, explaining, "given the unambiguous nature of the increased
7 responsibility, [Plaintiff] considered this to be a promotion, even
8 though there was no increase in pay attached to the new role"
9 Compl. ¶ 7.  There is no allegation that CNCS also considered the
10 title change to be a promotion.  Further, Plaintiff pled that the
11 old Deputy Director of Operations position was combined with the
12 Deputy Director position.  Id.  This Court finds that based on the
13 allegations in the complaint, Plaintiff was not promoted from one
14 position to another.

15      Plaintiff admits that he received no reduction in pay when
16 he was allegedly demoted back to the previously held position of
17 Deputy Director of Operations. He also has failed to allege exactly
18 what privileges and responsibilities he lost in the purported
19 demotion, and therefore the complaint does not plead facts
20 sufficient to bring the occurrence of a demotion beyond
21 speculation.  Twombly, 550 U.S. at 570 (a plaintiff needs to plead
22 "enough facts to state a claim to relief that is plausible on its
23 face").  In the present complaint, it is unclear whether the
24 alleged employment action was a mere change of title or a bona fide
25 demotion, and thus the Rule 8 pleading standard is not met, and
26 Plaintiff has not alleged the second element of a prima facie case.
27 Id.

28      Plaintiff also argues that the continued presence of Mr.

1  Holmes at the workplace constituted a hostile work environment,
2  which can be the basis for finding an adverse employment action.

3      "For an atmosphere of . . . harassment or hostility to be
4  actionable . . . the offending behavior must be sufficiently severe
5  or pervasive to alter the conditions of the victim's employment and
6  create an abusive working environment." Pa. State Police v.
7  Suders, 542 U.S. 129, 146–47 (2004) (quoting Meritor Savings Bank,
8  FSB v. Vinson, 477 U.S. 57, 67 (1986)).  A hostile work environment
9  creates a constructive discharge amounting to an adverse employment
10 action when a reasonable person in the same circumstance would feel
11 forced to resign.  Id. at 147 (citing Breeding v. Arthur J.
12 Gallagher & Co., 164 F.3d 1151, 1160 (C.A.8 1999)).

13     Again, Plaintiff fails to meet the requisite pleading
14 standard.  The complaint repeatedly alleges that Mr. Holmes conduct
15 was pervasively harassing, aggressive, and threatening, but it
16 provides no indication as to what that behavior actually was.  Rule
17 8 requires not just a recitation of legal characterizations or
18 labels, but the rule also requires Plaintiff to plead facts
19 sufficient to bring the allegations from the realm of the
20 speculative to the plausible.  Twombly, 550 U.S. at 570.
21 Plaintiff's allegations also indicate that Plaintiff left CNCS in
22 August 2009, several months after Mr. Holmes was actually removed
23 from CNCS.  Compl. ¶¶ 24, 26.  The complaint does not plausibly
24 allege that Mr. Holmes's actions created a hostile work environment
25 that caused Plaintiff to quit because Plaintiff quit well after Mr.
26 Holmes was terminated.

27     In short, The Court finds that Plaintiff has not properly
28 alleged that he suffered an adverse employment action, either

1   directly or through the hostile work environment doctrine.

2   (c)   <u>Causal Nexus</u>

3       Plaintiff has not sufficiently alleged the first two

4   components of a prima facie case, and therefore the complaint

5   cannot allege a causal nexus between the two.  Additionally,

6   Plaintiff's complaint indicates that the reason that he was

7   allegedly demoted was because he reported misconduct to the OIG.

8   Compl. ¶¶ 10-11.  Thus, Plaintiff's allegations concerning Mr.

9   Holmes are unrelated to Plaintiff's alleged demotion.  As explained

10  above, the report to the OIG is not protected by Title VII, and

11  Plaintiff alleges that he was demoted for that reason.  Plaintiff

12  does allege, "As a result of the disparate treatment of Mr. Willie

13  Holmes on the basis of his race (African American), the Plaintiff

14  was subjected to an ongoing hostile working environment, continued

15  harassment, and discrimination based on his race, color, and

16  national origin."  Compl. ¶ 25.  This allegation is a mere legal

17  conclusion, however, and the complaint is devoid of supporting

18  facts that make the allegation plausible.  <u>Twombly</u>, 550 U.S. at

19  570.  Accordingly, Plaintiff has not pled a causal nexus between an

20  alleged adverse employment action and any protected activity.

21      In sum, the Court finds that the complaint places Defendants

22  on notice of the nature of the claim against them, but Plaintiff

23  fails to allege facts sufficient to make entitlement to relief

24  plausible.  Without facts supporting the nature of Mr. Holmes's

25  behavior, the nature of Plaintiff's alleged demotion, and some

26  connection to activity protected by Title VII Plaintiff's complaint

27  does not meet federal pleading requirements.  Since Plaintiff may

28  be able to cure the defects in his pleading through amendment,

1  dismissal without prejudice is appropriate.

2         4.  Plaintiff's Racial Discrimination Claim

3       Defendants move to dismiss Plaintiff's Title VII

4  discrimination claim on the grounds that the complaint does not

5  contain a plausible discrimination claim.  Plaintiff responds that

6  there is a viable claim, and each element of a prima facie case is

7  met on the theory that since Defendants treated Mr. Holmes

8  favorably due to his race, Plaintiff was subjected to further

9  harassment from Mr. Holmes.

10      The legal standard for Plaintiff's race discrimination claim

11 is the same as the standard for his retaliation claim except that

12 the elements of the prima facie case are different.  To establish a

13 prima facie case of discrimination under Title VII, Plaintiff must

14 show "(1) he is a member of a protected class; (2) he is qualified

15 for his employment; (3) he experienced adverse employment action;

16 and (4) similarly situated individuals outside his protected class

17 were treated more favorably, or other circumstances surrounding the

18 adverse action give rise to an inference of discrimination."

19 Fonseca v. Sysco Food Services of Arizona, Inc., 374 F.3d 840, 847

20 (9th Cir. 2004) (citing McDonnell Douglas Corp., 411 U.S. at 802).

21             (a)  Plaintiff's Protected Class

22      There is no dispute that Plaintiff is Hispanic, a class

23 protected by Title VII.

24             (b)  Plaintiff Was Qualified For His Position

25      Defendants argue that the complaint never states that

26 Plaintiff was performing according to the employers legitimate

27 expectations.  Plaintiff responds that the complaint alleges that

28 he was promoted after a short time in employment, which indicates

1   that he was performing according to Defendants' legitimate

2   expectations.  Defendants do not rebut this argument, stating only

3   that they disagree with Plaintiff's argument.

4        Referring to the clear language in the complaint, the Court

5   finds that Plaintiff's qualifications for his position are properly

6   alleged.  Plaintiff was hired by CNCS, given the title Deputy

7   Director, and then returned to the job title Deputy Director of

8   Operations.  Plaintiff held these jobs and was not terminated,

9   disciplined, or warned for poor performance.  It is incongruous

10  with Plaintiff's alleged job history for Defendants to argue that

11  he was somehow not qualified for the positions that he was hired by

12  Defendants to fill.

13            (c)  <u>Plaintiff Suffered An Adverse Employment Action</u>

14       The Court finds that Plaintiff does not sufficiently allege

15  that he suffered an adverse employment for the same reasons

16  discussed above.

17            (d)  <u>Similarly Situated Individuals Were Treated
                    More Favorably</u>

18

19       Defendant contends that the complaint fails with respect to

20  this element of the prima facie case because Plaintiff claims only

21  that Mr. Holmes was treated more favorably than Plaintiff.  Since

22  Mr. Holmes was Plaintiff's subordinate, they were not similarly

23  situated.  Plaintiff responds that the analysis is not so rigid,

24  and that their roles were similar in all material respects.

25       "In order to show that the [employees] allegedly receiving

26  more favorable treatment are similarly situated . . ., the

27  individuals seeking relief must demonstrate, at the least, that

28  they are similarly situated to those employees in all material

1    respects."  <u>Moran v. Selig</u>, 447 F.3d 748, 755 (9th Cir. 2006)

2    (citing <u>Aragon v. Republic Silver State Disposal, Inc.</u>, 292 F.3d

3    654, 660 (9th Cir.2002)).  "[I]ndividuals are similarly situated

4    when they have similar jobs and display similar conduct. . . .

5    Employees in supervisory positions are generally deemed not to be

6    similarly situated to lower level employees." <u>Vasquez v. Cnty. of

7    L.A.</u>, 349 F.3d 634, 641 (9th Cir. 2003).  To meet this element,

8    Plaintiff may also allege "other circumstances surrounding the

9    adverse employment action [that] give rise to an inference of

10   discrimination."  <u>Peterson v. Hewlett-Packard Co.</u>, 358 F.3d 599,

11   603 (9th Cir. 2004).

12        In this case, it is clear from the face of the complaint that

13   the allegations do not meet the similarly situated requirement.

14   Plaintiff was either the Deputy Director or the Deputy Director of

15   Operations, and Mr. Holmes was his subordinate.  The two employees

16   were not similarly situated for purposes of Title VII.

17   Additionally, Plaintiff did not allege that he engaged in the

18   conduct practiced by Mr. Holmes.  Namely, Plaintiff does not allege

19   that both he and Mr. Holmes were aggressive, hostile, and

20   threatening to each other and other employees.  Thus, Plaintiff

21   does not allege that he and Mr. Holmes were treated differently

22   despite displaying similar conduct.  There are no facts or

23   allegations in the complaint that show other circumstances that

24   give rise to an inference of discrimination.

25        The complaint again places Defendants on notice of the nature

26   of the claim against them, but Plaintiff fails to allege facts

27   sufficient to make his allegations plausible.  Without facts

28   supporting the nature of Mr. Holmes's behavior, the nature of

1    Plaintiff's alleged demotion, or some facts that give rise to a
2    plausible inference of discrimination, Plaintiff's complaint does
3    not meet federal pleading requirements.   Accordingly, this claim is
4    dismissed.   Since Plaintiff may be able to cure the defects in the
5    complaint through amendment, leave to amend is granted.

6

7                            III. ORDER
8         After carefully reviewing all of the papers filed in relation
9    to this motion, the Court rules as follows:
10        1.   All claims against defendant Corporation for National
11   Community Service and all Doe defendants are dismissed with
12   prejudice;
13        2.   Plaintiff's Intentional Infliction of Emotional Distress
14   and Negligent Supervision, Hiring, and Retention claims are
15   dismissed with prejudice; and
16        3.   Plaintiff's remaining claims, Retaliation in Violation of
17   42 U.S.C. § 2000e-3(a) and Discrimination Based on Race in
18   Violation of 42 U.S.C. § 2000e-2, are dismissed with leave to
19   amend.
20        If Plaintiff wishes to file an Amended Complaint that is in
21   accordance with this Order, it must be filed within twenty (20)
22   days.   Otherwise, this case will be dismissed with prejudice.
23        IT IS SO ORDERED.
24   Dated: February 27, 2012
                                        _____
25                                      JOHN A. MENDEZ,
                                        UNITED STATES DISTRICT JUDGE
26

27

28