1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    VASCO ESPINOZA,                              No.  10-cv-03213 TLN-DAD

12                   Plaintiffs,

13         v.                                      **ORDER**

14    WENDY SPENCER, Chief Executive
      Officer of the Corporation for National and
15    Community Service,

16                   Defendant.

17

18         This matter is before the Court on Defendant, Wendy Spencer's ("Defendant") Motion for

19    Summary Judgment.[1]  (See Def.'s Mot. for Summ. J., ECF 48-1.)  Plaintiff opposes the motion.

20    (See Pl.'s Opp'n to Def.'s Mot. for Summ. J., ECF 54.)  Defendant has filed a reply.  (See Def.'s

21    Reply, ECF 57.)

22    ///

23    ///

24    ///

25    ///

26    ///

27

28    _____
      [1]    Because oral argument will not be of material assistance, the Court orders this matter
      submitted on the briefs. E.D. Cal. L.R. 230(g).

1

Plaintiff, a Hispanic male, is a former employee of the Corporation for National and Community Service ("CNCS").[2] Plaintiff complains that his subordinate, Willie Holmes, an African American male, constantly threatened and harassment him. Plaintiff alleges that, despite his numerous complaints and complaints of numerous other employees, Plaintiff's superiors, who are also African Americans, failed to adequately disciple Holmes in order to prevent further threats. Plaintiff maintains that this course of conduct created a hostile work environment. Plaintiff argues that his superiors treated Holmes differently because he is African American, and Plaintiff is not. Based on the foregoing, Plaintiff asserts two claims: (1) Retaliation in Violation of 42 U.S.C. § 2000e-3(a); and (2) Discrimination Based on Race in violation of 42 U.S.C. § 2000e-2. (See Pl.'s First Am. Compl. ("FAC"), ECF 26.)

## BACKGROUND[3]

### A. Factual Background

Plaintiff was hired by CNCS as a Deputy Director for the Pacific Region Campus in May, 2008. (SUF 1.) Regional Director James Phipps, an African American, was Plaintiff's first-line supervisor. (SUF 2.) Merlene Mazyck, also an African American, was the National Director and Plaintiff's second-line supervisor. (SUF 3.)

Shortly after CNCS hired him, Plaintiff was given his job description as Deputy Director, which was to oversee the operations of the region campus, supervise operation department staff, and perform other duties as assigned. (SUF 4-5; see also ECF 48, Ex. B.) Plaintiff admits that this was his formal job description. However, in his deposition—which the parties lodged with the Court—Plaintiff testified that James Phipps verbally expanded his duties and responsibilities.

[2] According to its website, CNCS is a nationwide community-service oriented organization that helps support a number of causes across the country, supporting education, veteran and military families, health, and economic opportunity. See http://www.nationalservice.gov/about.

[3] The relevant facts are, for the most part, undisputed. Where the facts are undisputed, the court will cite to Defendant's Statement of Undisputed Facts. (See Def.'s Stmt. of Undisputed Facts ("SUF"), ECF 48-2.) The Court may also, at times, cite to Plaintiff's statement of disputed facts and Defendant's response thereto. (See Pl.'s Am. Stmt. of Material Facts, ECF 55-1; Def.'s Resp. to Pl.'s Stmt. of Material Facts, ECF 57-2.) Finally, where necessary, and where a material fact is genuinely disputed, the Court will cite to the underlying evidence proffered by the respective parties.

1    (Espinoza Decl. at 92-95.)  During his deposition, Phipps testified that he assigned Plaintiff job

2    duties outside the normal scope of a Deputy Director.  Specifically, Plaintiff was designated to

3    oversee overall review of campus procedures, policies, and systems for improvement of

4    efficiency, instead of simply overseeing operations.[4]  (Phipps Depo at 37: 21-38:15.)  Plaintiff

5    concedes, however, that during the course of his employment, CNCS never issued Plaintiff a

6    different job description or title.  (SUF 6-7.)  Further, although Plaintiff alleges in the complaint

7    that he was demoted, Plaintiff concedes that he did not receive a change in pay.  (SUF 8.)

8         Willie Holmes was the Facilities Manager at the Pacific Region campus who worked in

9    the Operations Department.  (SUF 9.)  Plaintiff was Holmes' immediate supervisor.  (Id.)  In June

10   2008, Plaintiff reported that he had received a complaint about Holmes' concerning his conduct

11   towards two other staff members.  (SUF11.)  In response, the agency conducted an investigation

12   and put Holmes on administrative leave pending the investigation.[5]  (SUF 12)  On August 19,

13   2008, Plaintiff issued a formal reprimand to Holmes.  (SUF 13.)

14        On October 16, 2008, Plaintiff reported that Holmes had confronted Plaintiff and was

15   verbally aggressive with him.  (SUF 14.)  Specifically, in response to Defendant's interrogatory,

16   Plaintiff responded that "Holmes yelled at [Plaintiff] and told him he did not know "what the

17   fuck," and that Plaintiff would "pay for what he was doing."  (ECF 48, Ex. U, answer to

18   interrogatory no. 3.)  Plaintiff also stated that he "told Phipps that he was frightened of Holmes

19   and feared for his personal safety."  (Id.)

20        On October 29, 2008, Phipps placed Holmes on administrative leave pending an

21   investigation into Plaintiff's allegations.  (SUF 15.)  On November 12, 2008, Phipps issued a

22   Notice of Proposed Removal to Holmes in connection with the October 2008 incident with

23
     ---
     [4]    Defendant objects to, and moves to strike, Plaintiff's Amended Statement of Disputed
24   Material Fact as untimely filed.  The Court acknowledges that Plaintiff filed the Amended
     Statement after the deadline for filing opposition papers.  However, in light of the strong policy in
25   favor of deciding matters on the merits, the Court declines to strike the Amended Statement and
     will consider it in its analysis.  Plaintiff's counsel is admonished, however, that future failure to
26   comply with this Court's scheduling requirements, particularly without leave of Court, will not be
     tolerated in the future.
27   [5]    Pursuant to the collective bargaining agreement with its union, the agency employs
28   progressive discipline.

3

1  Plaintiff.  (SUF 16.)

2       In early December 2008, Plaintiff told Phipps that he had received a telephone call from a

3  former employee who said that Holmes was making threats against Plaintiff.  (SUF 17.)   In

4  response, the agency hired a security guard to patrol the campus and encouraged Plaintiff to

5  contact local authorities any time he felt threatened.  (SUF 18.)

6       In late November 2008, Plaintiff contacted the agency's Office of the Inspector General

7  (OIG) complaining, among other things, that Holmes and others were engaged in unethical and

8  possibly illegal operational activities.  (SUF 20.)  Plaintiff, in response to Defendant's

9  interrogatories, stated that later in December, Defendants removed a number of the duties

10  previously undertaken by Plaintiff.

11       On December 3, 2008, National Director Mazyck visited the Pacific Region campus to

12  conduct an In-Person Review ("IPR") of the campus systems, processes, procedures, and

13  effectiveness.  (SUF 24.)  Shortly thereafter, Mazyck reduced the proposed removal of Holmes to

14  a 30-day suspension.  (SUF 19.)

15       The ultimate IPR report noted significant deficiencies in the Pacific Region Operations

16  Department.  At deposition, Phipps testified that a significant source of the criticism from the IPR

17  directed at the Pacific Region related to duties assigned to Holmes.  (Phipps Depo at 145-155.)

18       On February 20, 2009, Acting National Director Mikel Herrington—who replaced

19  Mazyck—issued a Notice of Proposed Removal to Holmes and placed him on administrative

20  leave.  (SUF 21.)  On April 9, 2009, Chief of Program Operations Kristin McSwain, issued a final

21  decision to remove Holmes effective April 11, 2009.  (SUF 22.)

22       During the investigation, Plaintiff contacted an EEO counselor regarding alleged

23  discrimination.  (SUF 26.)  The EEO counselor subsequently issued Plaintiff a notice of right to

24  file a formal complaint, and Plaintiff filed his formal discrimination complaint on March 16,

25  2009.  (SUF 27.)  In August 2009, Plaintiff took a leave of absence and remained on leave until

26  he found employment with another federal agency.  (SUF 23.)  The EEOC granted summary

27  judgment to the agency and, on October 25, 2010, the agency issued its Notice of Final

28  Action/Order which notified Plaintiff of his appeal rights.  (SUF 28.)

1       **B.**     **Procedural Background**

2       Plaintiff filed his complaint in this Court on December 01, 2010, asserting the following

3 claims: (1) Retaliation in violation of Title VII; (2) Retaliation in Violation of the California

4 Government Code § 12940(h); (3); Retaliation in Violation of California Labor Code; (4)

5 Retaliation in violation of California Government Code § 12940(j)(k); (5) Employer Interference

6 with Employee Disclosures; (6) Discrimination Based on Race in Violation of Title VII; (7)

7 Intentional Infliction of Emotional Distress; (8) Violation of California's Ralph Civil Rights Act;

8 and (9) Negligent Supervision, Hiring and Retention.  (Pl.'s Compl., ECF 1.)  Plaintiff

9 subsequently voluntarily dismissed claims 2-5, and 8.  (ECF 16.)

10       On November 29, 2011, Defendant moved to dismiss Plaintiff's Complaint.  (Def.'s Mot.

11 to Dismiss, ECF 18.)  The Court issued its order granting the motion to dismiss on February 27,

12 2012.  (ECF 25.)  The Court dismissed with prejudice claims seven and nine for failure to exhaust

13 administrative remedies.  The Court also dismissed without prejudice Plaintiff's Title VII

14 retaliation claim, holding as follows: that neither Plaintiff's complaint to the agency's Office of

15 the Inspector General ("OIG") nor his complaints to his superiors about Holmes behavior were

16 protected activities; that Plaintiff's alleged "demotion" was not an adverse employment action;

17 and finally, that there was no causal nexus between the allegations concerning Holmes and

18 Plaintiff's alleged demotion.  The Court also dismissed without prejudice Plaintiff's Title VII

19 racial discrimination claim, holding that Plaintiff did not suffer an adverse employment action

20 and that he was not sufficiently similarly situated to Holmes.

21       Plaintiff filed his FAC in this Court on March 14, 2012 (ECF 26), asserting claims for

22 retaliation in violation of Title VII and discrimination based on race in violation of Title VII.

23 Defendant moved to dismiss the FAC on March 28, 2012.  (ECF 27.)  At the hearing on

24 Defendant's motion to dismiss the FAC, the Court found that the FAC alleged sufficient facts to

25 raise a reasonable inference that Defendant retaliated against Plaintiff for filing a complaint with

26 the EEO. The Court also noted that Plaintiff's allegations that Defendant's permitted Holmes to

27 harass Plaintiff because Holmes was African American and Plaintiff was not, were sufficient to

28 raise a plausible inference to support a claim for racial discrimination under a hostile work

1    environment theory.  The Court issued a written order denying Defendant's motion to dismiss the

2    FAC on May 29, 2012.  (ECF 33.)

3                                                    **STANDARDS**

4            **A.        Summary Judgment**

5            Summary judgment is appropriate when the moving party demonstrates no genuine issue

6    as to any material fact exists, and that the moving party is entitled to judgment as a matter of law.

7    Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  Under summary

8    judgment practice, the moving party always bears the initial responsibility of informing the

9    district court of the basis of its motion, and identifying those portions of "the pleadings,

10   depositions, answers to interrogatories, and admissions on file together with the affidavits, if

11   any," which it believes demonstrate the absence of a genuine issue of material fact.  Celotex

12   Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden

13   of proof at trial on a dispositive issue, a summary judgment motion may properly be made in

14   reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

15   file.'"  Id. at 324.  Indeed, summary judgment should be entered against a party who does not

16   make a showing sufficient to establish the existence of an element essential to that party's case,

17   and on which that party will bear the burden of proof at trial.  Id. at 322.

18           If the moving party meets its initial responsibility, the burden then shifts to the opposing

19   party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

20   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv.

21   Co., 391 U.S. 253, 288-289 (1968).  In attempting to establish the existence of this factual

22   dispute, the opposing party may not rely upon the denials of its pleadings, but is required to

23   tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

24   support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must

25   demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

26   suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that

27   the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

28   the nonmoving party.  Id. at 251-52.

1      In the endeavor to establish the existence of a factual dispute, the opposing party need not

2  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

3  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

4  trial."  First Nat'l Bank, 391 U.S. at 289.  Thus, the "purpose of summary judgment is to 'pierce

5  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

6  Matsushita, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963

7  amendments).

8      In resolving the summary judgment motion, the court examines the pleadings, depositions,

9  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c);

10  SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing

11  party is to be believed, and all reasonable inferences that may be drawn from the facts placed

12  before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at 255.

13  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

14  produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight

15  Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

16      Finally, to demonstrate a genuine issue that necessitates a fact finder, the opposing party

17  "must do more than simply show that there is some metaphysical doubt as to the material facts. . .

18  . Where the record taken as a whole could not lead a rational trier of fact to find for the

19  nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586-87.

20      **B.      Title VII**

21      Title VII claims are analyzed using the burden-shifting framework of McDonnell Douglas

22  Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). Under this approach, the

23  plaintiff in a Title VII case bears the initial burden of establishing a prima facie case before there

24  is any duty by a defendant to defend.  See McDonnell Douglas Corp., 411 U.S. at 802; Texas

25  Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).

26      However, merely stating a prima face case does not suffice to save a Title VII claim from

27  summary judgment. Burdine, 450 U.S. at 254; Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th

28  Cir. 1994) ("the mere existence of a prima facie case . . . does not preclude summary judgment").

1   Instead, stating a prima facie case simply shifts the burden to the employer to produce evidence

2   demonstrating "that the adverse employment actions were taken 'for a legitimate,

3   nondiscriminatory reason.'" St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (internal

4   citation omitted).

5          Once the employer has articulated a legitimate, non-discriminatory reason for the

6   employment action, the presumption of discrimination "drops from the case." Id.  Plaintiff must

7   then prove not only that the proffered legitimate reason is false, but also that intentional

8   discrimination was the true reason for the adverse personnel action. Id. at 515.  To avoid

9   summary judgment, plaintiff's evidence of pretext must consist of "sufficiently specific facts."

10  Collings v. Longview Fibre Co., 63 F.3d 828, 834 (9th Cir. 1995); Nidds v. Schindler Elevator

11  Corp., 113 F.3d 912, 918 (9th Cir. 1996); Wallis, 26 F.3d at 890.  Evidence to support a prima

12  facie case of discrimination alone is not sufficient to show pretext.  Snead v. Metro. Prop. & Cas.

13  Ins. Co., 237 F.3d 1080, 1093-94 (9th Cir. 2001) ("[S]ufficient evidence to support an inference

14  of discrimination . . . is not sufficient to raise a genuine issue of material fact regarding the truth

15  of [defendant's] proffered nondiscriminatory reasons . . .")

16                                      **ANALYSIS**

17  **A.      Exhaustion of Administrative Remedies**

18         Defendant maintains that this Court lacks jurisdiction over claims predicated upon

19  conduct that occurred prior to October 19, 2008.  Specifically, Defendant maintains that because

20  Plaintiff did not contact an EEO counselor until December 3, 2008, any alleged action that

21  occurred prior to October 18, 2008, is time-barred pursuant to 29 C.F.R. § 1614.105(a).  (ECF 48-

22  1 at 7:1-5.)  Plaintiff argues that this Court has jurisdiction over all the conduct alleged in the

23  complaint because Plaintiff's race discrimination claim is predicated upon repeated conduct that

24  created a hostile work environment.  (ECF 54 at 5:13-15.)  In reply, Defendant argues that

25  Plaintiff cannot make such a claim because Plaintiff has not asserted a claim for hostile work

26  environment.  (ECF 57 at 2:10-11.)

27         29 C.F.R. § 1614.105(a) provides that "[a]ggrieved persons who believe they have been

28  discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or

                                        8

1    genetic information must consult a Counselor prior to filing a complaint in order to try to

2    informally resolve the matter." That "aggrieved person must initiate contact with a Counselor

3    within 45 days of the date of the matter alleged to be discriminatory or, . . ." Id. at (a)(1).

4    "Failure to comply with this regulation is 'fatal to a federal employee's discrimination claim.'"

5    Cherosky v. Henderson, 330 F.3d 1243, 1245 (9th Cir. 2003) (quoting Lyons v. England, 307

6    F.3d 1092, 1105 (9th Cir. 2002)). However, "[t]he continuing violations doctrine creates an

7    equitable exception to a statutory limitation in a [discrimination] action when the unlawful

8    behavior is deemed ongoing." 45B Am. Jur. 2d Job Discrimination § 1140 (2012).   Hostile

9    environment claims are "different in kind from discrete acts" because "[t]heir very nature

10   involves repeated conduct." Nat'l Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 115

11   (2002).

12          The Court finds unavailing Defendant's contention that the continuing violations doctrine

13   is not applicable in this case because Plaintiff did not plead a hostile work environment claim.

14   The FAC specifically alleges that Defendant subjected Plaintiff to a hostile work environment.

15   (See ECF 1 ¶ 23.) Under Plaintiff's claim for racial discrimination, the Complaint incorporates

16   by reference the allegations that Defendant subjected him to a hostile work environment, and

17   thus, the Court will consider Plaintiff's hostile work environment claim. See Fontana v. Haskin,

18   262 F.3d 871, 877 (9th Cir. 2001) (holding that failure to specifically plead a claim for sexual

19   harassment was not fatal where the complaint described the alleged harassment and incorporated

20   those allegations by reference.) see also Indergard v. Georgia-Pacific Corp., 2010 WL 331774 at

21   *5 (D.Or. Jan. 21, 2010) ("[A] party need not plead specific legal theories in a complaint.").

22   Because Plaintiff incorporated allegations of hostile work environment into his claim for Title VII

23   racial discrimination, the Court will address this claim. In conclusion, because Plaintiff has

24   adequately pled a claim for hostile work environment predicated upon allegations of repeated

25   inappropriate conduct, the Court will consider conduct that occurred prior to October 8, 2008, but

26   only as that conduct relates to Plaintiff's hostile work environment claim.

27   ///

28   ///

9

1

**B.     Retaliation**

2      Defendant moves for summary judgment on Plaintiff's claim that Defendant retaliated

3  against Plaintiff for contacting the OIG and filing an administrative complaint.  In Plaintiff's

4  opposition to Defendant's motion, Plaintiff mentions the retaliation claim in passing.[6]

5  Specifically, after a brief recitation of the legal standard for retaliation claims, Plaintiff simply

6  states that he "believes the evidence will show . . . that he was demoted . . . in part because he

7  reported and opposed the discrimination directed toward him, . . ."  (ECF 54 at 11:4-26.)

8      In order to meet his prima facie burden for his retaliation claim, Plaintiff must show that

9  he was engaged in a protected activity, which includes either: (1) where an employee has opposed

10 any practice made an unlawful employment practice by Title VII, or (2) where an employee has

11 made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or

12 hearing under Title VII.  42 U.S.C. § 2000e-3(a).  Plaintiff must show, at the very least, that

13 Defendant's conduct was sufficiently severe to dissuade a reasonable worker from making or

14 supporting a charge of discrimination.   Burlington Northern and Santa Fe Ry. Co. v. White, 548

15 U.S. 53, 57 (2006).

16     Here, the Court finds that Defendant has met its initial burden of informing the Court of

17 the basis of its motion.  Celotex, 477 U.S. at 323.  Specifically, Defendant has demonstrated that,

18 as the Court previously held, Plaintiff's participation in the OIG investigation is not a protected

19 activity.  (See Order, ECF 25 at 7:3-9:13.)  Moreover, Defendant has demonstrated that Plaintiff

20 has proffered zero evidence of a causal link between his contact with an EEOC counselor in 2008

21 and his alleged demotion in 2009.  Specifically, Plaintiff has not proffered any evidence that any

22 decision maker—specifically Regional Director Mazyck—knew that he had contacted the

23 counselor.  See Celotex, 477 U.S. at 322 (holding that summary judgment should be entered

24 against a party who does not make a showing sufficient to establish the existence of an element

25 essential to that party's case, and on which that party will bear the burden of proof at trial.)

26

27    [6]     Indeed, Plaintiff devotes only a portion of a page in his opposition to his claim for
      retaliation.  Plaintiff's response to Defendant's motion as to his claim for retaliation seems to
28 indicate that Plaintiff has little faith in his own claim.

1      Because Defendant, the moving party, has met its initial responsibility, the burden shifts

2      to Plaintiff to establish that a genuine issue of material fact exists.  Matsushita Elec. Indus, 475

3      U.S. at 585-87.  In attempting to establish the existence of a factual dispute, Plaintiff merely

4      states that he "believes the evidence will show . . . there is at least a factual dispute" that he was

5      retaliated against because "he participated in the complaints of discrimination made by others."

6      (ECF 54 at 11:22-26.)  This matter is currently at the summary judgment stage, and thus, what

7      Plaintiff believes the evidence may or will show is irrelevant; all that is relevant is what the

8      evidence proffered in support of Plaintiff's instant opposition shows.  Indeed, the Court has

9      already found that his participation in the OIG investigation is not a protected activity.[7]  (ECF

10     25.)    The Court therefore finds that Plaintiff's conclusory statement that the evidence will show

11     a triable issue of fact is insufficient to meet his burden on summary judgment. As such,

12     Defendant's motion for summary judgment on Plaintiff's claim for retaliation is GRANTED.

13          **C.      Racial Discrimination**

14          Defendant moves for summary judgment on Plaintiff's second claim for racial

15     discrimination on the grounds that Plaintiff did not suffer an adverse employment action.

16     Specifically, Defendant maintains that Plaintiff did not suffer any adverse employment action

17     because there was neither a change in his job title nor a change in compensation.[8]  (ECF 48-1 at

18     8:11-12.)  Defendant also argues that Plaintiff has not demonstrated that his alleged "demotion"

19     was based on race.

20          Plaintiff characterizes his claim as different from the type of "adverse employment" claim

21     Defendant addresses.  Specifically, Plaintiff asserts that his case is not a disparate treatment

22     claim, but rather that Defendant created a hostile work environment based upon race.  (ECF 54 at

23

24     [7]      As the Court noted in its order dismissing Plaintiff's first complaint, "[a] complaint by
       Plaintiff concerning favoritism based on race may be protected by Title VII, . . ."; however,
       Plaintiff has not directed the Court to any evidence that he complained to his supervisors
25     concerning favoritism based on race.

26     [8]      The focus of Defendant's motion is on disparate treatment discrimination.  That is,
       Defendant also argues that Plaintiff cannot prove that his alleged demotion was based on race
27     However, as set forth above, Plaintiff may state a claim for hostile work environment
       discrimination under Title VII. It is axiomatic that Title VII encompasses a claim for "hostile
28     work environment." McGinest v.GTE Service Corp., 360 F.3d +1103, 1112 (9th Cir. 2004).

1   6:23-25.)  However, after stating that his claim is based on a theory of hostile work environment,

2   Plaintiff argues that "he did suffer an adverse employment action."  (Compare ECF 54 at 5:18-7:6

3   with ECF 64 at 7:16-8:3.)  Specifically, Plaintiff maintains that his responsibilities diminished

4   after he complained about potentially unethical conduct and participated in the OIG

5   investigation.[9]  (ECF 54 at 724-28.)  Plaintiff maintains that this reduction in workload affected

6   his stature at the workplace.

7      Title VII provides that it is "an unlawful employment practice for an employer . . . to

8   discriminate against any individual with respect to his compensation, terms, conditions, or

9   privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Title

10  VII encompasses not only claims for disparate treatment based on race, but also provides a claim

11  for the creation of a hostile work environment, which violates the guarantee of "the right to work

12  in an environment free from discriminatory intimidation, ridicule, and insult." Meritor Sav. Bank,

13  FSB v. Vinson, 477 U.S. 57, 65 (1986). "Courts have long recognized that a workplace in which

14  racial hostility is pervasive constitutes a form of discrimination." Woods v. Graphic

15  Communications, 925 F.2d 1195, 1200 (9th Cir.1991).

16     In order to survive summary judgment, Plaintiff must establish a genuine factual dispute

17  as to "1) whether a reasonable [Hispanic person] would find the workplace so objectively and

18  subjectively racially hostile as to create an abusive working environment; and 2) whether

19  [Defendant] failed to take adequate remedial and disciplinary action." McGinest v. GTE Service

20  Corp., 360 F.3d 1103, 1112 (9th Cir. 2004) (citing Steiner v. Showboat Operating Co., 25 F.3d

21  1459, 1462-63 (9th Cir.1994)). In evaluating whether the workplace environment is sufficiently

22  hostile to violate Title VII, the Court must take into account "all the circumstances." Nichols v.

23  Azteca Rest. Enter., 256 F.3d 864, 872 (9th Cir.2001). It is enough "if such hostile conduct

24  pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her

25  work, and to desire to stay on in her position." Steiner, 25 F.3d at 1463. In evaluating the

26  objective hostility of a work environment, the factors to be considered include the "frequency of

27

28  [9]   Plaintiff acknowledges, however, that his job title, description, and compensation did not
    change.

12

1    discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

2    offensive utterance; and whether it unreasonably interferes with an employee's work

3    performance." Nichols, 256 F.3d at 872.

4         "[E]mployers are liable for failing to remedy or prevent a hostile or offensive work

5    environment of which management-level employees knew, or in the exercise of reasonable care

6    should have known." McGinnest, 360 F.3d at 1119 (quoting Ellison v. Brady, 924 F.2d 872, 881

7    (9th Cir.1991)). "The reasonableness of the remedy depends on its ability to: (1) stop harassment

8    by the person who engaged in the harassment; and (2) persuade potential harassers to refrain from

9    unlawful conduct."  Nichols, 256 F.3d at 875 (internal quotations omitted); see also Ellsion, 924

10   F.2d at 882 ("Title VII requires more than a mere request to refrain from discriminatory

11   conduct.")

12              i.      Severe or Pervasive Hostile Environment[10]

13        Here, there is no debate that Plaintiff, subjectively, found the workplace sufficiently

14   hostile as to create an abusive working environment—Plaintiff maintains that the hostile work

15   environment ultimately caused him to take a leave of absence and to quit his job. The Court also

16   finds that a triable issue of material fact exists as to whether, objectively, Plaintiff was subjected

17   to a hostile work environment. For example, Plaintiff has proffered evidence that Holmes

18   repeatedly harassed him, yelled and cursed at him, even though Holmes was his inferior.[11]

19   Plaintiff also testified that he felt physically frightened of Holmes.  Moreover, during deposition,

20   Plaintiff further testified that "Phipps told [Plaintiff] that neither he nor Mazyck would take any

21   action against an African-American Employee."  (ECF 54-1 No. 16.)   The veracity of these

22   statements is irrelevant as credibility determinations are the province of the trier of fact, and

23

24   [10]    The Court notes that, while Plaintiff's claim for hostile work environment will proceed
      past summary judgment, Plaintiff has not addressed any other theory of racial discrimination
25   under Title VII. As such, Plaintiff has not met his summary judgment burden as to any other
      theory of Title VII racial discrimination, and thus, the only claim that survives summary
26   judgment is Plaintiff's claim for racial discrimination under a theory of hostile work environment.
      [11]    Defendant does not necessarily dispute that any of this conduct occurred.  Instead,
27   Defendant, for the most part, states that it is irrelevant.  The Court disagrees.  Constant yelling
      and harassing is certainly relevant to a claim for hostile work environment.
28

1   inherently inappropriate at the summary judgment stage.  Based on the aforementioned conduct, a

2   reasonable juror could find that "such hostile conduct pollute[d] the victim's workplace, making it

3   more difficult for [him] to do [his] job, to take pride in [his] work, and to desire to stay on in [his]

4   position." Steiner, 25 F.3d at 1463.   Surely, a reasonable juror could find that, as Holmes

5   immediate supervisor, the alleged acquiescence to Holmes' insubordination made it more difficult

6   for Plaintiff to do his job.

7           Based on the foregoing, the Court finds that this matter involves difficult problems of

8   proof and credibility that is not subject to resolution at the summary judgment stage. Cf. Meritor

9   Sav. Bank, FSB, 477 U.S. at 68 (explaining that a claim for hostile work environment predicated

10  upon allegations of sexual harassment "presents difficult problems of proof and turns largely on

11  credibility determinations committed to the trier of fact, . . .")  The Court therefore finds that

12  Plaintiff has satisfied his burden of establishing a triable issue of material fact that Defendant

13  subjected him to a hostile work environment.

14              *ii.     Remedial Measures*

15          The Court also finds that Plaintiff has established a genuine issue of material fact as to

16  whether Defendant took adequate remedial and disciplinary action when Plaintiff complained of

17  Holmes' harassing conduct.  First, the Court acknowledges, as does Plaintiff, that Holmes was

18  placed on administrative leave and suspended in 2008, and was ultimately terminated in 2009.

19  However, according to the evidence proffered by Plaintiff, which the Court must believe, the

20  harassing conduct began during Plaintiff's first month of employment, and continued until

21  Holmes was terminated in 2009. See Baldwin v. Continental Cas. Co., 2004 WL 2254938 at *8

22  (N.D. Cal. Oct. 5, 2004) ("On summary judgment, the Court does not weigh the evidence

23  presented and must believe the non-moving party.")

24          Based on the foregoing, the Court finds that genuine issues of material fact exist as to

25  whether Defendant took sufficient remedial measures to either "stop harassment by the person

26  who engaged in the harassment" or "persuade potential harassers to refrain from unlawful

27  conduct." Nichols, 256 F.3d at 875. Based on the foregoing, Defendant's motion for summary

28  judgment on Plaintiff's Title VII claim for racial discrimination under a hostile work environment

1   theory is DENIED.

2   **CONCLUSION**

3        Based on the foregoing, Defendant's motion for summary judgment is granted in part and

4   denied in part.  Specifically, Defendant's motion for summary judgment is GRANTED as to

5   Plaintiff's claim for retaliation under Title VII; Defendant's motion for summary judgment as to

6   Plaintiff's claim for racial discrimination predicated upon a theory of hostile work environment is

7   DENIED.

8   Dated: July 21, 2014

9

10

11           Troy L. Nunley

12           United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28