UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

VASCO ESPINOZA,

Plaintiff,

v.

WENDY SPENCER, Chief Executive Officer of the Corporation for National and Community Service,

Defendant.

No. 2:10-cv-03213-TLN-CMK

**ORDER**

This matter is before the Court pursuant to Defendant Wendy Spencer's ("Defendant") Motion to Revise the Court's Summary Judgment Order. (ECF No. 67.) Plaintiff Vasco Espinoza ("Plaintiff") opposes Defendant's motion. (ECF No. 69.) Defendant has filed a reply. (ECF No. 70.) The Court has carefully considered the arguments raised by the parties. For the reasons set forth below, Defendant's Motion to Revise the Court's Summary Judgment Order is DENIED.

## I. PRELIMINARY DISCUSSION REGARDING NATURE OF MOTION

In essence Defendant's motion presents the Court with a purely legal question. The question is: whether a plaintiff may proceed to trial on a Title VII racially hostile work environment theory where a supervisor refused to address severe and pervasive race-neutral harassment because the supervisor preferred members of the harrasser's race to those of

plaintiff's. (*See* ECF No. 67-1 at 2–4; ECF No. 70 at 3–4.) Defendant argues this theory fails as a matter of law. (*See* ECF No. 67-1 at 2–4; ECF No. 70 at 3–4.) Consequently, Defendant argues the portion of the Court's order denying Defendant's motion for summary judgment on Plaintiff's Title VII discrimination claim ("Order") (ECF No. 60) must be revised to enter summary judgment in Defendant's favor. (*See* ECF No. 67-1 at 4; ECF No. 70 at 5.)

The parties disagree over whether Federal Rule of Civil Procedure 54(b) provides the proper vehicle for correcting the Court's alleged legal error. Plaintiff argues that Defendant's motion should be construed as a motion to alter or amend under Federal Rule of Civil Procedure Rule 59(e) or as a motion seeking relief from a judgment under Federal Rule of Civil Procedure Rule 60(b). (ECF No. 69 at 1.) Plaintiff further argues that if the motion is so construed, it would be untimely. (ECF No. 69 at 2.) Defendant argues that a motion under Federal Rule of Civil Procedure 54(b) is proper because the Court has not yet entered judgment adjudicating all claims and, in Defendant's view, the Order contains a clear error because it permits a trial on a hostile work environment theory that fails as a matter of law. (ECF No. 67-1 at 2; ECF No. 70 at 1–2.)

The Court rejects Plaintiff's argument that this motion should be construed as either a motion under Rule 59(e) or Rule 60(b). Rule 59(e) relates to the amendment of a final judgment or an appealable interlocutory order, and Rule 60(b) relates to the modification of a final judgment, order, or proceeding. *See* Fed. R. Civ. P. 60(b); *Quinn v. Fresno Cty. Sheriff*, No. 1:10-cv-1617 LJO, 2012 WL 2839648, at *1–2 (E.D. Cal. July 10, 2012). The Court's Order falls into none of these categories. *See Quinn*, 2012 WL 2839648 at *1 (quoting *Senza–Gel Corp. v. Seiffhart*, 803 F.2d 661, 669 (Fed. Cir. 1986) ("A denial of summary judgment is not only not a 'final judgment,' and not appealable, it is not a judgment at all. It is quite simply and solely a determination that one or more issues require a trial.")). However, the Court is authorized to reconsider or revise this Order under Rule 54(b) and its inherent powers. *See* Fed. R. Civ. P. 54(b); *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885, 889 (9th Cir. 2001); *Andrews Farms v. Calcot, Ltd.*, 693 F. Supp. 2d 1154, 1165 (E.D. Cal. 2010) ("The denial of a summary judgment motion ... is an interlocutory, unappealable order that can be reviewed by the district court at any time before final judgment is entered.")

The Court sets out below an abbreviated factual and procedural background sufficient to frame the Defendant's legal question. Unless specifically identified, these are not in dispute for purposes of this motion and are drawn from the Court's Order.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, a Hispanic male, was formerly an employee of the Corporation for National and Community Service ("CNCS"). (ECF No. 60 at 2.) Plaintiff alleges that his subordinate, Willie Holmes, an African American male, constantly physically threatened and harassed him. (ECF No. 60 at 2.) Plaintiff alleges that, despite his numerous complaints and the complaints of numerous other employees, Plaintiff's first-line supervisor, Jim Phipps, and second-line supervisor, Merlene Mazyck, failed to adequately discipline Holmes in order to prevent further threats. (ECF No. 60 at 2.) Both Phipps and Mazyck are African American. (ECF No. 60 at 2.) No evidence was offered that any of Holmes's behavior was overtly racial, e.g., the use of racial epithets, or that his conduct toward Plaintiff was motivated by Plaintiff's race. However, Plaintiff did introduce evidence that he was informed by Phipps that neither Phipps nor Mazyck were willing to take any action against any African American employees. (ECF No. 60 at 13.) Additionally, it is undisputed that Mazyck reduced a proposed termination of Holmes for threatening Plaintiff to a 30-day suspension. (ECF No. 60 at 4.) Similarly, it is undisputed that CNCS ultimately issued a "final decision to remove Holmes" after Mazyck was replaced as National Director of CNCS. (ECF No. 60 at 4.)

The Court's Order denied Defendant's motion for summary judgment on Plaintiff's Title VII racial discrimination claim after finding that Plaintiff had raised a triable issue regarding whether he had been subjected to a hostile work environment because of his race. (ECF No. 60 at 13–15.)

## III. STANDARD OF REVIEW

With respect to non-final orders, such as an order granting in part and denying in part a defendant's motion for summary judgment, the Ninth Circuit has recognized that "[a]s long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Santa*

*Monica Baykeeper*, 254 F.3d at 885 (internal quotation marks omitted). This inherent power is grounded "in the common law and is not abridged by the Federal Rules of Civil Procedure." *Id*. at 887. In addition to the inherent power to modify a non-final order, Rule 54(b) authorizes a district court to revise a non-final order "at any time before entry of a judgment adjudicating all the claims." Fed. R. Civ. P. 54(b); *see also Regents of Univ. of Calif. v. Bernzomatic*, No. 2:10–cv–1224 FCD GGH, 2011 WL 666912, at *2 (E.D. Cal. Feb.11, 2011) (relying on Rule 54 in deciding whether to reconsider the denial of summary judgment). A district court may reconsider and reverse a previous interlocutory decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of controlling law. *Abada v. Charles Schwab & Co., Inc.*, 127 F. Supp. 2d 1101, 1102 (S.D. Cal. 2000). Nevertheless, a court should generally leave a previous decision undisturbed absent a showing of clear error or manifest injustice. *Id*. at 1102.

## IV. ANALYSIS

As a preliminary matter, the Court rejects Plaintiff's argument that Defendant's motion is untimely. Plaintiff's argument is premised on the idea that this motion should have been brought under either Rule 59(e) or Rule 60(b), which the Court rejected above. (*See* ECF No. 69 at 1–3.) The Court still has jurisdiction over the case, and a final judgment adjudicating all of Plaintiff's claims has not been entered. Accordingly, whether Plaintiff's motion is treated as appealing to the Court's inherent authority to modify a non-final order, or a motion under Rule 54(b), Defendant's motion is timely. *See* Fed. R. Civ. P. 54(b); *Santa Monica Baykeeper*, 254 F.3d at 885.

Before proceeding, it is worth noting that Plaintiff specifically disavowed that he was proceeding on a disparate treatment theory for his Title VII racial discrimination claim. (*See* ECF No. 60 at 11.) Plaintiff proceeds solely on a hostile work environment claim based on race theory. (*See* ECF No. 69 at 3–4.)

To survive at the summary judgment stage on a Title VII hostile work environment based on race claim, a plaintiff must submit sufficient evidence to raise a triable issue as to the following elements: (1) that he was subjected to verbal or physical conduct because of his race;

(2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003); *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002). The Ninth Circuit has held that individual defendants may not be held personally liable under Title VII for their own harassing behavior. *See Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583, 587 (9th Cir. 1993). Therefore, if the plaintiff is successful in making a sufficient showing on these elements, the court examines whether the plaintiff's employer is liable for a racially hostile work environment created by its employees. *See Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013). Because Defendant's motion only challenges the first element, the Court need not further explicate the standard. (*See* ECF No. 67-1 at 2–3; ECF No. 70 at 3.)

Defendant contends that in order to satisfy the first element a plaintiff must submit evidence that his tormentor displayed overtly racial behavior, e.g., using racial epithets, or evidence that the tormentor was motivated by hatred or contempt for the plaintiff's race. For example, Defendant argues the Court "erred" in concluding that Plaintiff was subjected to an "objectively and subjectively racially hostile" environment because the "Court did not find that the harassment, yelling and cursing [of Plaintiff by Holmes] was *racially* hostile, as opposed to simply hostile." (ECF No. 67-1 at 3 (emphasis retained).) Additionally, Defendant suggests that "fail[ure] to respond to [Plaintiff's] complaints about Holmes's abusive, but racially-neutral, behavior because Plaintiff is Hispanic and his superiors are African American" can only be heard as a disparate treatment claim, if at all. (ECF No. 70 at 3.)

Defendant's contention is inconsistent with the text of Title VII and the Supreme Court and Ninth Circuit's explanation of the nature of Title VII hostile work environment claims. Title VII provides in relevant part that "[i]t shall be an unlawful employment practice for an employer … to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The hostile work environment theory of liability for a Title VII discrimination claim derives from the Supreme Court's interpretation of "terms" and

"conditions" to cover more than "'terms' and 'conditions' in the narrow contractual sense." *See Oncale v. Sundown Offshore Serv., Inc.*, 523 U.S. 75, 78 (1998); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (explaining for harassment based on sex to be actionable under Title VII it must be sufficiently severe or pervasive to alter the terms and conditions of the plaintiff's employment); *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21–22 (1993) (explaining that the work environment of the plaintiff must be both subjectively and objectively perceived as abusive because "if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation").

The Supreme Court's analysis in *Oncale* made clear that harassment of a person constitutes "*discrimination* … because of" his membership in a class protected by Title VII when the harassment he endures subjects him to "disadvantageous terms or conditions of employment to which members" outside of this class are not exposed. *Oncale*, 523 U.S. at 80 (emphasis retained). There the Court acknowledged that "male-on-male sexual harassment was assuredly not the principal evil Congress was concerned with when it enacted Title VII" but that the Court's holding "must extend to sexual harassment of any kind that meets the statutory requirement." *Id.* at 79–80. Consequently, the Court explained that Title VII covered same-sex harassment irrespective of the sexual orientation of the harasser or whether the harasser was motivated by sexual desire so long as the plaintiff was subjected to the harassment because of his sex. *Id.* at 80.

Ninth Circuit precedent demonstrates that conduct by supervisors which exposes a plaintiff to physically dangerous work conditions because of his race is properly considered in determining whether the plaintiff has been subjected to a hostile work environment because of his race. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1107–08, 1118, 1125 (9th Cir. 2004). In pertinent part, the Ninth Circuit in *McGinest* reversed the district court's order granting summary judgment on the plaintiff's racially hostile work environment claim. *Id.* at 1125. There the Ninth Circuit concluded that the plaintiff had "persuasively demonstrat[ed] that he was subjected to a hostile work environment" by submitting two categories of evidence. *Id.* at 1107, 1119. One category was "written and oral derogatory statements." *Id.* at 1107. The other category was

"concrete actions" that at times put the plaintiff in serious physical danger. *Id*. at 1107–09. For example, the plaintiff submitted evidence that, due to his race, he was required to work either "without proper equipment" or without "sufficient crew members to safely perform the job" by one of his supervisors. *Id*. at 1107. The plaintiff also submitted evidence that he experienced a potentially life-threatening accident because, "due to his race, both his supervisor and garage personnel were unwilling to ensure that his vehicle received necessary maintenance." *Id*. at 1107–09, 1114.

Ninth Circuit precedent also demonstrates that exposing a plaintiff to physical violence and race-neutral verbal abuse need not be accompanied by evidence that the plaintiff's tormentor hated members of the plaintiff's ethnic or racial group or even had negative views of them in order to establish a Title VII hostile work environment claim. *Kang*, 296 F.3d at 817. In applicable part, the Ninth Circuit in *Kang* reversed the district court's order granting summary judgment on the plaintiff's hostile work environment based on a national origin claim. *Id*. There both the plaintiff and the alleged harasser, his supervisor, were of Korean descent. *Id*. The plaintiff alleged that his supervisor viewed Koreans to be superior to others and subjected the plaintiff and other Korean workers to verbal and physical abuse for failing to live up to this view. *Id*. The Ninth Circuit acknowledged that this was an "unusual" case in that it involved failure to live up to positive stereotypes and did not involve the plaintiff being subjected to "racial epithets in the workplace." *Id*. Nevertheless, the Ninth Circuit explained that being unusual did not remove the case from the "evil at which the statute is aimed." *Id*.

The Court acknowledges that in the instant case Plaintiff's allegations are "unusual". The Court has been able to locate only a few instances of published opinions relating to factually similar allegations, each arising in the context of suits by teachers alleging that school administrators were unwilling to adequately discipline students that threatened these teachers and that this unwillingness was based on the relevant teacher's race or gender. *See, e.g.*, *Bliss v. Rochester City Sch. Dist.*, 196 F. Supp. 2d 314 (2002) (dealing with multiple plaintiffs, two of whom made such claims); *Murphy v. Bd. of Educ. of Rochester City Sch. Dist.*, 273 F. Supp. 2d 292 (2003); *Cepada v. Bd. of Educ. of Baltimore Cty.*, 814 F. Supp. 2d 500 (2001). In both *Bliss*

and *Murphy*, the district court entered summary judgment on the relevant hostile work environment claim due to the plaintiff's failure to submit sufficient evidence that the school district acted the way it did because of that plaintiff's race. *Bliss*, 196 F. Supp. 2d at 325, 330; *Murphy*, 273 F. Supp. 2d at 312. However, in neither instance was it suggested that such a claim could not be made if a plaintiff submitted sufficient evidence. *Bliss*, 196 F. Supp. 2d at 325 ("But, the defect here is that Bliss failed to set forth sufficient evidence that discrimination against Caucasians was more than likely the reason for the district's alleged failure to act concerning these student-teacher problems."); *Murphy*, 273 F. Supp. 2d at 312 ("[N]or is there any evidence to support plaintiff's conclusory allegation that the District turned a blind eye to violence only when it was perpetrated against white teachers."). Moreover, the district court in *Cepada* denied the board of education's motion to dismiss on the plaintiff's hostile work environment claim concluding that the plaintiff, an African American male, had not failed to state a hostile work environment claim where he alleged that: (i) the "administration ignored his requests to remove or take action against disruptive and violent students," including one that threatened him with a gun, and (ii) administrators were responsive to dangerous student incidents involving his white and female colleagues. *Cepada*, 814 F. Supp. 2d at 512.

The Court finds the analysis of *Cepada* to be consistent with *Oncale*, *McGinest* and *Kang* and therefore is persuaded that a plaintiff may proceed to trial on a Title VII racially hostile work environment theory where a supervisor refused to address severe and pervasive race-neutral harassment because the supervisor preferred members of the harrasser's race to those of plaintiff's. Plaintiff has introduced evidence suggesting that his supervisors did not discipline Holmes adequately because of their preference for members of Holmes's race. (*See* ECF No. 60 at 13.) If a jury finds Plaintiff's testimony credible they could reasonably infer that Plaintiff's supervisors would have been more responsive to his concerns if Plaintiff was of their preferred race. Plaintiff's credibility as a witness is for the jury to decide. Consequently, the Order does not need to be revised as the Defendant has failed to show it contains legal error.

/ / /

/ / /

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion to Revise the Court's Summary Judgment Order is DENIED.

IT IS SO ORDERED.

Dated: November 8, 2016

Troy L. Nunley
United States District Judge